IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| **JOHN DOE,** | : | |
| **Plaintiff,** | : | **Civil Action Number:  CV 221-071** |
| **V.** | : | |
| **MERRICK B. GARLAND in his official** | : | |
| **capacity as the Attorney General for the** | : | |
| **DEPARTMENT OF JUSTICE, and** | : | |
| **MICHAEL CARVAJAL in his official** | : | **<u>Jury Trial Demanded</u>** |
| **capacity as the Director of the** | : | |
| **FEDERAL BUREAU OF PRISONS,** | : | |
| **Defendants.** | | |

## COMPLAINT

This is a suit brought by Plaintiff against Merrick B. Garland in his official capacity as the Attorney General for the Department of Justice (DOJ) and Michael Carvajal in his official capacity as the Director of the Federal Bureau of Prisons (BOP) as follows:

1.      Plaintiff brings this action against Defendants under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, as amended by 29 U.S.C. § 791(f) and 29 U.S.C. § 705(9)(B) and (20)(B) to incorporate provisions and definitions contained in the Americans with Disabilities Act, as amended (hereinafter the "Rehabilitation Act") to recover  compensatory damages for emotional distress caused by Defendants' impermissible inquiries regarding Plaintiff's mental impairments and

impermissible disclosures of confidential information regarding Plaintiff's mental illness and the treatment for that mental illness.  Plaintiff also seeks equitable relief, including an order mandating that managers at the Jesup, Georgia Federal Correctional Institution (FCI Jesup) receive training regarding disability-related inquiries and regarding the duty to keep disability related information confidential.

2.     This Court has subject matter jurisdiction over the present action under 28 U. S.C. § 1331 because this case arises under the Rehabilitation Act, 29 U.S.C. §791 *et seq*.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4), and 28 U.S.C. §§ 2201 and 2202.

3.     Venue properly lays in the United States District Court for the Southern District of Georgia under 28 U.S.C. § 1391 because Defendants are located in and the events giving rise to the claims in this Complaint arose in this judicial district.

4.     Plaintiff has exhausted all administrative remedies, as outlined below:

a.     On or about November 4, 2019, Plaintiff complained to the BOP EEO Office regarding events occurring on and after October 3, 2019.

b.     On or about November 19, 2019, Plaintiff filed a Complaint with the DOJ (BOP-2020-0240).

c.     On or about August 6, 2020, Plaintiff received the EEO Counselor's

Report of Investigation for that Complaint (ROI).

      d.      On or about August 14, 2020, Plaintiff requested that the BOP issue a final agency decision.

      e.      More than 180 days has passed since Plaintiff filed a Complaint and neither the BOP nor the DOJ has issued a final agency decision. *See* 29 C.F.R. § 1614.407(b).

      f.      Plaintiff has moved for leave to proceed anonymously as permitted in cases involving the disclosure of mental illness due to the stigma attached to mental illness. *See Doe v. Neverson*, 820 F. App'x 984, 988 (11th Cir. 2020); *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 687 (11th Cir. 2001), and *Doe .v Frank*, 951 F.2d 320, 324 (11th Cir. 1992.)

## PARTIES

5.      Plaintiff John Doe resided in Hinesville, Georgia within Liberty County, Georgia and worked at FCI Jesup at the time of the events forming the basis for this Complaint.  Plaintiff is a 51 year old veteran who was employed by the BOP for approximately 10 years.

6.      Defendant Merrick B. Garland is the Attorney General for the Department of Justice. In this capacity he is responsible for the conduct and policies of the

Department of Justice including the conduct and policies of the Federal Bureau of Prisons. Attorney General Garland is sued in his official capacity only.

7.      Defendant DOJ is an agency of the United States and is responsible for the conduct and policies of itself and its operating division, the BOP.

8.      Defendant Michael Carvajal is the Director of the Federal Bureau of Prisons. In this capacity he is responsible for the conduct and policies of the Federal Bureau of Prisons, including at the Federal Correctional Institution located in Jesup, Georgia. Director Carvajal is sued in his official capacity only.

9.      Defendant BOP is an operating division of Defendant DOJ and an agency of the United States that acts, directly or indirectly, in the interest of the DOJ.

10.     At all times relevant to this Complaint, Defendants DOJ and BOP conducted operations in Jesup, Georgia in the FCI Jesup location at which Plaintiff worked.

## STATEMENT OF FACTS

11.     Plaintiff began working for the BOP in approximately February of 2010.

12.      At all times relevant to this Complaint, Plaintiff was a reliable, hard – working employee who received satisfactory performance evaluations.

13.      In late July 2019, Plaintiff received a disability rating from the Veterans Administration (VA) including for Post-Traumatic Stress Disorder (PTSD) and

Major Depression related to combat infantry experiences during war.

14.     In or around early August 2019, Plaintiff submitted a confidential Self-Identification of Disability Form to the FCI Jesup Personnel office (SF-256) indicating that Plaintiff had Targeted Disability 91- "Significant Psychiatric Disorder, for example, … PTSD, or major depression."

15.     Form SF-256 states on page one: "Every precaution is taken to ensure that the information provided by each employee is kept in the strictest confidence."

16.     Form SF-256 states on page two that "every precaution will be taken to ensure that the information provided by each employee is kept in the strictest confidence and is known only to those individuals in the agency Personnel Office, who obtain and record the information for entry into the agency's and OPM's personnel systems."

17.     On the morning of Thursday October 3rd 2019, Plaintiff texted his immediate supervisor Director of Education Tim Farmer, who was out on leave, and his coworkers David Pritchard and David Parks, who covered his duties when he was absent: "Being admitted to the hospital not sure when I'll be back to work."

18.     Plaintiff's text to Director Farmer complied with DOJ, BOP and FCI Jesup protocol and Farmer's practice regarding obtaining notices of absence from work.

19.     Although Plaintiff did not share this with his supervisor or with anyone else at FCI Jesup, his psychiatrist had him admitted to the hospital on suicide watch.

20.     Plaintiff had chosen not to share with FCI Jesup his history of treatment for suicidal ideation.

21.     Upon information and belief, on Monday October 7th or Tuesday October 8th when the Warden's Executive Assistant, Winston Freeman, called Farmer to ask about Plaintiff, Farmer forwarded him Plaintiff's text message regarding being admitted to the hospital.

22.     Plaintiff texted Farmer on Tuesday October 8th, 2019 after his discharge from the hospital to let him know that he would be back at work on October 10th.

23.     Plaintiff did not have access to his phone while he was in the hospital.

24.     When Plaintiff was discharged from the hospital, he found his phone had many text messages and voicemails from family, friends and FCI Jesup staff who seemed worried about him.

25.     One message he received was from Acting Warden Chad Garrett who asked him to call as soon as possible.

26.     When Plaintiff called him back on October 8th, Garrett told Plaintiff he had him on speaker phone with Freeman. Garrett stated everyone at work was very

worried about him and asked him if he was okay.

27.    There were only two work days on which Plaintiff did not communicate with FCI Jesup after telling his supervisor he was being admitted to the hospital and was not sure when he would return to work.

28.    Mr. Freeman told Plaintiff he had been to his house looking for him and that he had been in Plaintiff's backyard and that Plaintiff needed to mow his grass.

29.    Warden Garrett told Plaintiff to come and meet with him on his return.

30.    On October 10, 2019, Plaintiff met with Garrett who proceeded to ask him about his mental health and if he was stable.

31.    Plaintiff felt extremely uncomfortable and did not understand how the Warden knew about his mental health issues or why he was asking those questions.

32.    Many FCI Jesup staff members, some of whom were strangers Plaintiff did not really know, approached him and asked if he was okay and expressed concern.

33.    Upon information and belief, while Plaintiff was in the hospital, Freeman left a voicemail for Plaintiff's ex-wife "Christie" stating he was "trying to track [Plaintiff] down … he has been out of pocket for a couple of days … and I was calling to see if maybe he had contacted you in any fashion or if you could help us in contacting him."

34.    Upon information and belief, when Christie called him back Freeman told her that Plaintiff had not been to work since October 2, 2019, that he had texted that he would be indisposed for a while, that they did not know where he was, that FCI Jesup sent the sheriff to his home and no one was there, and that they found his truck in the VA parking lot in Hinesville, GA.

35.    Upon information and belief, Christie contacted Plaintiff's sister and brother in law, and his best friend Steve and shared that information.

36.    They also had not heard from Plaintiff and, upon information and belief, all of them were very concerned and began to call police, fire, hospitals, veteran's organizations, and Plaintiff's church but could not get any information about him.

37.    Upon information and belief, Freeman told Plaintiff's sister that he was worried about Plaintiff and was concerned that Plaintiff was suicidal.

38.    Upon information and belief, Freeman told Steve Plaintiff's dogs were in his house, but his truck was gone and his neighbors were not taking care of his dogs.

39.    Upon information and belief, Freeman and Garrett directed a subordinate to check Plaintiff's house.

40.    Upon information and belief Freeman and Garrett told a former FCI Jesup psychologist who had transferred to another FCI job and location that they were

concerned about Plaintiff and that they had heard he might have checked into St. Simon's by the Sea for evaluation or treatment.

41.    Upon information and belief, Freeman told the FCI Jesup EAP counselor that Plaintiff was out because he was having "a depression or could possibly be of suicidal harm to himself."

42.    Upon information and belief, Freeman at some point told Plaintiff's sister, ex-wife and best friend that he believed Plaintiff had been admitted to a mental health facility, St. Simons by the Sea.

43.    Upon information and belief, during his hospitalization, Freeman and FCI Jesup made inquiries about Plaintiff regarding his mental health disability or that would be likely to lead to information regarding his mental health disability.

44.    Upon information and belief, during Plaintiff's hospitalization, Freeman and FCI Jesup intimated to others that Plaintiff has a mental illness and was at risk of self-harm and had been admitted to a psychiatric facility, St. Simons by the Sea.

45.    Upon information and belief, during the time Plaintiff was in the hospital, Freeman and Defendants' inquiries and statements to Plaintiff's family and friends resulted in them calling multiple hospitals, law enforcement agencies and the

pastor of his church in an attempt to locate him, to plan to come to Hinesville to file a missing person report and to fear that Plaintiff may have committed suicide.

46.    Plaintiff's sister, ex-wife and best-friend Steve shared with Plaintiff the anxieties created by Freeman's inquiries and disclosures and failure to disclose Plaintiff's  report to his supervisor that he was being admitted to the hospital and did not know how long he would be out of work.

47.    Plaintiff's pastor told him that everyone at church was quite worried about him because he was missing and had feared for his safety and well-being.

48.    Defendants' inquiries and disclosures of confidential medical information that Plaintiff chose to keep private caused him anxiety, anger, embarrassment and depression and caused him to avoid interactions with others.

49.    Plaintiff's treating psychiatrist and therapist have expressed the view that Defendants' inquiries and disclosures exacerbated Plaintiff's symptoms.

50.    Plaintiff filed an EEO Complaint with the BOP/DOJ alleging that Freeman, Garrett, FCI Jesup and/or the BOP/DOJ had made impermissible inquiries and disclosures regarding Plaintiff's mental health during his hospitalization.

## COUNT I

## VIOLATION OF REHABILITATION ACT
## "REGARDED AS" DISABILITY DISCRIMINATION

51.    At all times relevant hereto, Defendants have been subject to the

requirements of Section 501 of the Rehabilitation Act as amended by the ADA.

52.    At all times relevant hereto, Plaintiff was an individual with a disability as

defined under the Rehabilitation Act, as amended, inasmuch as Plaintiff was

regarded as a person with a mental impairment as defined by the Act.

53.    Under the Rehabilitation Act, as amended by the ADA Amendments Act, an

individual can state a "regarded as" claim "whether or not [their] impairment limits

or is perceived to limit a major life activity."  42 U.S.C. §12102(1) (C) and 42

U.S.C. §12102 (3) (A).  "Because of that amendment, a plaintiff need demonstrate

only that the employer regarded [him] as being impaired, not that the employer

believed the impairment prevented the plaintiff from performing a major life

activity."  *Wolfe v. Postmaster General*, 488 Fed. Appx. 465, 468, 2012 WL

3792091, No. 11–12973.  (11th Cir. August 31, 2012). "[A]n individual who is

'regarded as having such impairment' is not subject to a functional test. If an

individual establishes that he or she was subjected to an action prohibited by the

[Rehabilitation Act] because of an actual or perceived impairment--whether the

person actually has the impairment or whether the impairment constitutes a

disability--then the individual will qualify for protection under the Act." *ADA*

*Amendments Act of 2008 –Statement of the Managers – Regarded As* at S8346

(Senate - September 11, 2008) available on line at

(https://www.congress.gov/congressional-record/2008/9/11/senate-

section/article/S8342-1.)

54.    At all times relevant to this Complaint, Plaintiff had one or more mental

impairments, including PTSD and Major Depressive Disorder.

55.    Upon information and belief, Defendants DOJ and BOP and FCI Jesup were

on notice of Plaintiff's mental impairments by reason of his confidential Self-

Identification of a Significant Psychiatric Disorder (SF-256) in August 2019.

56.    Upon information and belief, Executive Assistant Freeman and Acting

Warden Garrett impermissibly obtained information regarding Plaintiff's

significant psychiatric disorders.

57.    Alternatively, upon information and belief, Freeman (and Garrett) and the

Defendants perceived Plaintiff as having a mental impairment, as evidenced by the

facts recited in paragraphs 26, 30, 32-34, 37, 40-41 and 43 above.

58.     Plaintiff did not disclose to anyone at FCI Jesup that he was being admitted to a mental health facility for observation/treatment for suicidal ideation.

59.     Plaintiff did not disclose to his family or friends that he was being admitted to a mental health facility for observation/treatment for suicidal ideation.

60.     Plaintiff had not disclosed to anyone at FCI Jesup that he was ever treated for risk of suicide.

61.     Upon information and belief, Freeman and Defendants questioned personnel at the VA facility at which Plaintiff was treated for mental health issues about Plaintiff's location, mental health status and hospitalization.

62.     Upon information and belief, Freeman and Defendants questioned the law enforcement personnel who worked at that VA facility about Plaintiff's location, mental health status and hospitalization.

63.     Upon information and belief, Freeman and Defendants questioned the law enforcement personnel who transported Plaintiff to St. Simons at the Sea about Plaintiff's location, mental health status and hospitalization.

64.     Upon information and belief, Freeman and Defendants questioned personnel at St. Simon at the Sea about Plaintiff's mental health status and hospitalization.

65.    Upon information and belief, Freeman and Defendants asked Plaintiff's family, neighbors, law enforcement officers and current and former coworkers and/or prompted them to ask about Plaintiff's location, mental health status and/or hospitalization.

66.    Upon information and belief, Freeman and Defendants impermissibly disclosed to Plaintiff's best friend, ex-wife, sister, and current and former staff members without the need to know that he believed Plaintiff was suicidal.

67.    Upon information and belief, Freeman and Defendants impermissibly disclosed to Plaintiff's best friend, ex-wife, sister, and current and former staff members who did not have the need to know that he believed Plaintiff had been admitted to a psychiatric facility.

68.    Upon information and belief, Defendants did not provide Acting Warden Garrett or Executive Assistant Freeman with adequate training regarding Rehabilitation Act restrictions on disability-related inquiries and on Rehabilitation Act confidentiality requirements.

69.     On October 3, 2019, Plaintiff texted his immediate supervisor: "Being admitted to the hospital not sure when I'll be back to work."

70.    Plaintiff did not disclose his hospital admission to his family and friends.

71.   Plaintiff's text to his immediate supervisor was sufficient to meet the requirements of FCI Jesup's absence policy.

72.   Plaintiff was out of touch with supervisor Farmer for only two work days after he texted Farmer he was being admitted to the hospital and did not know how long he would be out.

73.   Upon information and belief, Defendants treated Plaintiff's absence differently than it treated the absences of other employees who had properly notified their supervisors of their absence because Defendant regarded Plaintiff as having a mental impairment or illness as defined by the Rehabilitation Act.

74.   Upon information and belief, had Defendant not regarded Plaintiff as having a mental impairment or mental illness, Defendants would not have made the inquiries regarding Plaintiff listed above or disclosed to others Defendants' belief Plaintiff was a risk to himself and might be in treatment at a mental health facility.

75.   Defendants' differential treatment took away Plaintiff's freedom to maintain the confidentiality of his mental illness and admission to the hospital, invaded his privacy, and caused him anxiety, anger, embarrassment and depression.

76.   As a result of Defendants' actions, and the disclosure of Plaintiff's private mental health issues to coworkers – some of whom were "strangers", to friends and

family, and to members of his church, he began to limit his interactions with others and felt he could no longer be seen the same way in his community or workplace.

77.    Defendants' actions also magnified Plaintiff's mental health issues and increased his anxiety and irritability and panic attacks.

78.    Defendants' violation of Plaintiff's rights also led to him incurring relocation expenses to move to a community where he would have the freedom to decide what information to disclose or not disclose about his mental health issues.

79.    In addition, Defendants' actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, anger, anxiety, panic attacks, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

### COUNT II

### VIOLATION OF REHABILITATION ACT
### IMPERMISSIBLE INQUIRIES

80.    Under the Rehabilitation Act, as amended by the ADA, it is unlawful for an employer to make disability related inquiries unless such inquiries are "job related

and consistent with business necessity."   42 U.S.C. § 12112(d)(4); 29 C.F.R.

§§1630.13(b) and 1630.14(c).[1]

81.    Upon information and belief, Defendants, including Acting Warden Garrett and Executive Assistant Freeman made inquiries relating to Plaintiff's confidential disclosure on Form SF- 256 that he had a significant psychiatric disorder.

82.    Upon information and belief, Defendants, including Assistant Freeman, asked questions of Plaintiff's coworkers, including current and former FCI Jesup psychologists that were likely to elicit information about Plaintiff's disability.

83.     Upon information and belief, Freeman and Defendants asked Plaintiff's coworkers and current and former FCI Jesup psychologists, to make inquiries regarding Plaintiff's disability or the severity and treatment of that disability.

84.    Upon information and belief, Defendants made inquiries of Plaintiff's health care providers regarding Plaintiff's disability and its severity or treatment.

85.    Upon information and belief, Defendants made inquiries of law enforcement officers regarding Plaintiff's transportation to a mental health facility.

---

[1] *See https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-disability-related-inquiries-and-medical*

86.    Upon information and belief, Defendant asked questions of Plaintiff's best friend and family members that were likely to elicit information about Plaintiff's disability and the treatment of that disability.

87.    Upon information and belief, Defendants encouraged Plaintiff's best friend, ex-wife and family members to ask questions likely to elicit information about Plaintiff's disability and the treatment of that disability.

88.    Upon information and belief, as a result of these inquiries, Plaintiff's friends and family members made inquiries at local hospitals and law enforcement agencies and called his pastor at his church.

89.    In addition, Acting Warden Garrett himself asked Plaintiff questions likely to elicit information about Plaintiff's disability, and/or the severity of and treatment of his disability including when he met with him on October 10, 2019.

90.    At the time Defendants made these inquiries and encouraged others to make inquiries, Defendants did not have a reasonable belief based on objective evidence that Plaintiff would be unable to perform the essential duties of his job, with or without reasonable accommodation, because of a mental health condition.

91.    At the time Defendants made these inquiries and encouraged others to make such inquiries, Defendants did not have a reasonable belief based on objective

evidence that Plaintiff presented a direct threat to his own or to others safety.

92.    Defendants' inquiries took away Plaintiff's freedom to maintain the confidentiality of his mental illness and admission to the hospital, invaded his privacy, and caused him anxiety, anger, embarrassment and depression.

93.    As a result of Defendants' inquiries of Plaintiff's current and former coworkers – some of whom were "strangers", and of friends and family members, he began to limit his interactions with others and felt he could no longer be seen the same way in his community or in his workplace.

94.    Defendants' actions magnified Plaintiff's mental health issues and increased his anxiety and irritability and panic attacks.

95.    Defendants' inquiries and their effect on Plaintiff led to him taking additional medical leave and losing pay.

96.    Defendants' violation of Plaintiff's rights also led to him incurring relocation expenses to move to a community where his health issues had not been made the topic of conversation and speculation.

97.    Defendants' actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, anger, anxiety, panic attacks, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT III

## VIOLATION OF REHABILITATION ACT
## IMPERMISSIBLE DISCLOSURE
## OF CONFIDENTIAL MEDICAL INFORMATION

98.     Under the Rehabilitation Act, as amended by the ADA, information

obtained by an employer as a result of disability-related inquiries regarding the

medical condition or history of an employee must be treated as a confidential

medical record. 42 U.S.C. §§12112(d)(4)(C) and (d)(3)(B); 29 C.F.R. §1630.14(c).

99.     Upon information and belief, Defendants, including Assistant Freeman,

disclosed to Plaintiff's family, friends, coworkers and former coworkers his belief

that Plaintiff was depressed.

100.    Upon information and belief, Defendants, including Assistant Freeman,

disclosed to Plaintiff's family, friends, coworkers and former coworkers his belief

that Plaintiff was a suicide risk.

101.    Upon information and belief, Defendants, including Assistant Freeman,

disclosed to Plaintiff's family, friends and coworkers his belief that Plaintiff had

been admitted to an inpatient mental health facility and/or to St. Simons at the Sea.

102.  Defendants' disclosures took away Plaintiff's freedom to maintain the confidentiality of his mental illness and admission to the hospital, invaded his privacy, and caused him anxiety, anger, embarrassment and depression.

103.  As a result of Defendants' disclosures, Plaintiff began to limit his interactions with others and felt he could no longer be seen the same way in his community or in his workplace.

104.  Defendants' actions magnified Plaintiff's mental health issues and increased his anxiety and irritability and panic attacks.

105.  Defendants' disclosures and their effect on Plaintiff led to him taking additional medical leave and losing pay.

106.  Defendants' violation of Plaintiff's rights also led to him incurring relocation expenses to move to a community where his health issues had not been made the topic of conversation and speculation.

107.  In addition, Defendants' actions have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, anger, anxiety, panic attacks, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT VIII
## VIOLATION OF REHABILITATION ACT
## INTERFERENCE WITH PRIVACY RIGHTS

108.   At all times relevant hereto, Defendants have been subject to the requirements of Title I and Title IV of the ADA, as amended through the Rehabilitation Act at 29 U.S.C. §791(f) and 29 U.S.C. §§ 705(9)(B) and (20)(B).

109.   Defendants violated the Rehabilitation Act, as described in 42 U.S.C. § 12203(b) which makes it unlawful "to interfere with any individual in the exercise or enjoyment of, or on account of …her having exercised or enjoyed … any right granted [by the Rehabilitation Act]."

110.   Defendants interfered with Plaintiff's right under the Rehabilitation Act to be free from disability-related inquiries unless such inquiries were job related and consistent with business necessity.

111.   Defendants interfered with Plaintiff's rights under the Rehabilitation Act by not keeping his disability-related information confidential and instead disclosing disability-related information and speculation to coworkers, friends, family and former coworkers in violation of the prohibitions of the Rehabilitation Act.

112.   Defendants' interference with Plaintiff's rights under the Rehabilitation Act took away Plaintiff's freedom to maintain the confidentiality of his mental illness

and admission to the hospital on suicide watch, invaded his privacy, and caused him anxiety, anger, embarrassment and depression.

113. As a result of Defendants' interference, Plaintiff began to limit his interactions with others and felt he could no longer be seen the same way in his community or in his workplace.

114. Defendants' interference with Plaintiff's rights magnified his mental health issues and increased his anxiety and irritability and panic attacks.

115. Defendants' interference with Plaintiff's rights and the effect of this interference on Plaintiff led to him taking additional medical leave and losing pay.

116. Defendants' interference with Plaintiff's rights also led to him incurring relocation expenses to move to a community where his health issues had not been made the topic of conversation and speculation.

117. In addition, Defendants' interference with Plaintiff's rights have caused, continue to cause, and will cause the Plaintiff to suffer damages for emotional distress, anger, anxiety, panic attacks, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

WHEREFORE, Plaintiff respectfully prays that the Court:

a. Issue a declaratory judgment that Defendants' acts, policies, practices,

and procedures complained of herein violated an employee's rights as secured under the Rehabilitation Act as amended and require Defendants to post this judgment at FCI Jesup;

b. Grant Plaintiff a permanent injunction enjoining Defendants, from making improper disability-related inquiries or disclosures, and from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because they are regarded as disabled or that interferes with their privacy rights under the Rehabilitation Act;

c. Order Defendants to provide training to the managers, supervisors and staff and employees of FCI Jesup regarding their rights and obligations under the Rehabilitation Act;

d. Order Defendants to make Plaintiff whole by reimbursing to him any out-of-pocket losses, including the costs of relocating his home, as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants unlawful and discriminatory acts, together with interest thereon, in an amount to be proven at trial;

e.  Order Defendants to compensate Plaintiff for the non-pecuniary mental and emotional damages suffered as a result of Defendants' unlawful and discriminatory acts;

f.  Grant to Plaintiff a jury trial on all issues so triable;

g.  Grant to Plaintiff any reasonable attorney's fees he has incurred and reasonable expert witness fees together with any and all other costs associated with this action as provided by 29 U.S.C. §794a(a) and (b);

h.  Grant to Plaintiff interest as provided by 29 U.S. C. §794a (a); and

i.  Grant such additional relief as the Court deems proper and just.

Respectfully submitted, this 30th day of July, 2021.

/s/ Lisa B. Golan_____
Georgia Bar No. 065157

Lisa B. Golan, Attorney at Law
3259C Peachtree Corners Circle
Peachtree Corners, GA 30092
Telephone: (770) 409-7922
lbgolan@golanlawoffice.com

Attorney for Plaintiff John Doe